## JAMES HILL V. STATE

No. 31,693. March 23, 1960

State's Motion for Rehearing Overruled April 27, 1960

*Burks, O'Connor & Brister,* and *Brown & Shuman,* by *E. M. O'Connor, III,* Lubbock, for appellant.

*William J. Gillespie,* County Attorney, by *E. M. Fulton, Jr.,* Assistant County Attorney, Lubbock, for state.

MORRISON, Presiding Judge.

The offense is possession of beer, whiskey, vodka, gin and wine for the purpose of sale in a dry area, with two prior convictions for offenses of like character alleged for enhancement; the punishment, four years in jail and a fine of $4,000.00.

The sufficiency of the evidence to sustain the conviction is challenged.

Inspector Bowman of the Texas Liquor Control Board testified that he and other officers, none of whom were armed with a search warrant or warrant of arrest, went looking for appellant and a certain black Chevrolet at 4:30 in the morning on the day charged in the information, that they went to a duplex located at "3104 Magnolia to raid for alcoholic beverages," that they were met at the door by an unidentified colored woman who said she was in charge of the premises and gave them permission to enter and search. He stated that a search of such apartment revealed that it consisted of a bedroom, a dining room in which a "juke box" was located, and a kitchen containing a refrigerator and a "coke box" from which he recovered six 32-ounce containers of beer. One of the officers testified that he had been to this apartment before and had observed people sitting round drinking. The amount of beer found in the kitchen is not sufficient to raise the statutory presumption that the same was possessed for the purpose of sale; so we will not concern ourselves with the question of whether or not the evidence is sufficient to show that appellant had the same in his possession. The officers, who had known appellant for years, testified that they did not know the name of the woman who admitted them and claimed to be in charge of the premises or who lived in the apartment in question. Appellant was, however, undressed and in bed in the bedroom at the time of the search.

In order to support this conviction, the state relies upon a quantity of intoxicants which were found in an automobile parked near the house, together with certain papers taken from the person of appellant at the police station. The title to the automobile in question was shown to be in a W. M. Hunter, with 3104 Magnolia given as his address. *No witness testified that he had ever seen appellant drive this automobile.* It was parked, according to Lieutenant Sortore, about 15 to 20 feet from the door of the apartment, and no automobile keys were found on appellant's person when he was searched. It was shown by other testimony from the officers that there were

several houses in the immediate vicinity, that appellant was in the "juke box" business and said that the one at the location belonged to him and that the motor of the automobile would run but because of some defect in the gears it would not move under its own power, which made it necssary for them to secure the services of a wrecker in order to get the automobile to the sheriff's office.

The papers which were recovered from appellant's person, and we express no opinion as to the legality of the search of his person, and those found in the room where he was in bed, have been sent up with the record. In the main, they consist of names and sums of money, together with numerous arithmetic calculations. We do find such entries as "1-1½ pt. Crow 2.50" and "2½ pts RC 4.00," and "Six Schlitz, can 25.52," but we also find such items as "Trash .50," and "Eggs 2.00" and "Laundry 2.28," On appellant's person was found a yellow sheet which reads in full as follows (according to our best transcription thereof) :

| Quan. | Brand | Price | Amount |
|---|---|---|---|
| "27- | Bud | Qt. | 121.23 |
| "20- | T-Bay | can | 80.00 |
| "6- | Schlitz | can | 25.62 |
| "2- | Crow 86 | ½ | 120.00 |
| "1- | W. Vodka 80 | ½ | 48.95 |
| "1- | G. Gin | ½ | 54.75 |
| "1- | P. Cellar | ½ | ᴸ4.25 |
| "5- | Silver Satin | 1/10 | 48.00 |
| | | | 552.80 |

"ND 7-27-59
"30 Qt.
"2 Crow
"2 Wine
"2 Flat

This is the most incriminating evidence in the case. *None of the papers were shown to be in appellant's handwriting, nor does appellant's name appear thereon.* We do find the name "W. M. Hunter 3104 Magnolia" on one of the sheets of paper.

Appellant called the witness Booker T. Washington, who resided in the vicinity and who testified that the automobile belonged to him, as did the intoxicants, that he was planning a party, had taken delivery of the intoxicants in a cotten field north of the

city some few days before and, while doing so, had twisted the axle and had to be pushed into town. He stated that he parked the automobile where it was found instead of nearer his house because he did not want to get in trouble if the same was found and that because the automobile was almost without value he had never bothered to have the certificate of title transferred into his name.

We have concluded that the facts, viewed from the standpoint most favorable to the state are not sufficient to support the jury's verdict that appellant had the intoxicants found in the automobile in his care, control and custody. This is a circumstantial evidence case, and the state did not overcome the outstanding hypothesis that the unindentified woman who claimed to be in charge of the apartment where the first beer was found may also have been exercising control over the intoxicants found in the automobile or that Washington or Hunter may have possessed it.

In Baker v. State, 154 Tex. Cr. Rep. 340, 227 S.W. 2d 567, the officers were watching a barn in which they had found a large quantity of intoxicants when Baker drove up in the driveway and started toward the barn on foot. Baker was reversed because the evidence was insufficient, and this court pointed out that there was no testimony that the accused exercised any ownership, posession or control of the barn.

In Crain v. State, 160 Tex. Cr. Rep. 87, 267 S.W. 2d 553, the officers searched Crain's cafe, where they found some beer, but in order to bring into operation the statutory presumption the state had to rely upon intoxicants found in a one-room house some twenty feet away. This court held that, since the place where the first beer was found was a business establishment, the existence of a trail from it to the one-room house was not sufficient to show that appellant exercised any control over the one room house.

See also Crutchfield v. State, 137 Tex. Cr. Rep. 572, 132 S.W. 2d 857; Maddox v. State, 156 Tex. Cr. Rep. 151, 240 S.W. 2d 319; and Cropper v. State, 160 Tex. Cr. Rep. 412, 271 S.W. 2d 818.

In view of our holding that the evidence is insufficient to support the conviction, the other questions raised by appellant will not be discussed.

The judgment is reversed and the cause is remanded.